## Dale, Appellant, *v.* City of Scranton.

*Municipal contracts—Payment by assessments—Laches in collection—Interest.*

1. Where a city enters into a contract with a contractor for the paving and grading of streets, and it is provided in the contract that the fund for the payment at the contract price is to be derived from assessments on property benefited "and that the city is to be liable to the contractor only for the amounts actually collected from said assessments as the same are collected," and the city delays for four years and more after the work is completed in making the collections, it will be liable to pay the contract price out of its general funds although it may have filed liens and issued writs of scire facias within the time prescribed by law.

2. In such a case the contractor is entitled to interest from the date of the completion of the work.

Argued Feb. 22, 1911. Appeal, No. 341, Jan. T., 1910, by plaintiffs, from order of C. P. Lackawanna Co., Jan. T., 1908, No. 983, in sustaining exceptions to report of referee in case of H. G. Dale and Sarah Allis Grant, Administrators of M. H. Dale Estate, v. City of Scranton. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Exceptions to report of H. R. Vandeusen, Esq., referee.

The referee found the facts, inter alia, as follows:

A contract was entered into by the city of Scranton with M. H. Dale on July 30, 1902, for the paving and curbing, including other work incidental thereto, of the portions of certain streets under the provisions of an ordinance.

The contract between M. H. Dale and the city of Scranton contained the following provisions: "In consideration whereof the City of Scranton agrees so far as collections shall be made from assessments as hereinafter mentioned to pay the said contractor for said work as follows: [Here follows schedule of prices for various items of work as set forth in the proposal of said contractor.] It is further expressly understood and agreed that the fund for the payment of the above contract price is to be derived from assessments on property benefited by the work; and that the city is to be liable to the contractor only for the amounts actually collected from said assessments as the same are collected."

M. H. Dale simultaneously with the execution of said contract executed and delivered to the city of Scranton his bond in one-half the sum of the contract price with approved sureties conditioned upon the faithful performance of the work contracted for and keeping said paving in repair for a period of five years from its completion.

Dale, July 28, 1901, commenced work under this contract under the supervision of the Department of Public Works, and all of said work was completed and accepted by the city on January 25, 1904.

The ordinance provided by secs. 4, 5 and 6 that assessments to pay for the work should be made by the chief engineer against abutting properties according to the foot front rule; and that said assessments should be payable in five equal installments, the first installment to become due and payable thirty days after the commencement of the work and the balance in four equal annual installments thereafter; said installments to bear interest at the rate

of six per cent per annum, commencing thirty days after the commencement of the work until paid.

The proper officers of the Department of Public Works proceeded to make assessments against the abutting properties in accordance with secs. 4 and 5 of the ordinance, and the schedule of assessments as finally ascertained and determined show a total assessment to pay the cost of the work amounting to $43,791.63.

The city treasurer and afterwards the city solicitor of the city of Scranton, proceeded to make collections of said assessments as authorized by the ordinance.

The city solicitor on June 28, 1904, filed liens against all properties, the assessments against which for said work had not been paid at that time.

The city controller was furnished estimates by the chief engineer showing that the amount of work done under the contract was as follows: Partial estimate, June 30, 1903, $19,554.18, final estimate, January 25, 1904, $23,382.45; that the sum of $855 was charged to the contractor's account as costs of inspection; and that the total amount due contractor for all work was $42,936.63.

Prior to January 25, 1904, payments were made to . M. H. Dale on account of said contract aggregating $9,804.50; that from January 25, 1904, to July 8, 1909, inclusive, $22,111.95 has been paid to M. H. Dale or his representatives and all of the amounts collected by the city from the assessments levied have been so paid over to the contractor, or his representatives.

The liens filed for all of the assessments not yet collected have been duly revived by writs of scire facias and the lien thereof continued against the abutting properties, the last sci. fa. being issued June 10, 1909.

The referee reported in favor of the plaintiff; but on the subject of the claim of interest reported as follows:

It is contended by the plaintiff that inasmuch as the contractor was to be paid from the assessments levied for the work, and as these assessments bore interest from thirty days after the commencement of the work, the

contractor is therefore entitled to interest on the total contract price dating thirty days after the commencement of the work.

This position seems untenable. The city agreed to pay the contractor a specific sum of money to be afterwards determined. It provided that this sum should be payable only from a certain fund, to wit, the assessments levied under this same ordinance. If the city by prompt collection of assessments had created a fund sufficient to pay the contractor and had then paid the same over, its obligations thereunder would have been discharged.

It seems that if the contractor is to receive all and only such sums as the city collects from these assessments, then there is no basis at all for the present action. The plaintiffs by bringing this suit have virtually abandoned their claim against the assessments as a fund for payment, and say that inasmuch as the city has failed to get money into this fund sufficient to pay the contract price, it should pay them from the general revenues the balance due on the contract, irrespective of any amounts or the interest thereon which the city may hereafter collect from these assessments.

Accordingly the question of interest on the assessments is in no way involved in this case, it being a matter exclusively between the city and the assessed property owners. The fact that the amount collected from this source is designated as a fund for the payment of the amount due the contractor cannot alter the other provision of the contract that nothing was due the contractor until the completion of the work, and the legal conclusion to be drawn from the same that the balance due ought to bear interest only from that date.

The referee directed judgment to be entered in favor of the plaintiffs in the sum of $16,625.13, with interest from July 8, 1909.

The court sustained defendant's exceptions to the referee's report and directed judgment to be entered for the defendant. Plaintiffs appealed.

*Errors assigned* were in sustaining defendant's exceptions and overruling plaintiffs' exceptions to the report and in directing judgment for the defendant.

*M. J. Martin* and *A. D. Dean*, for appellants.—The city was liable for the unpaid assessments: Barber Asphalt Paving Co. v. Harrisburg, 64 Fed. Repr. 283; Gable v. Altoona, 200 Pa. 15; O'Hara v. Scranton, 205 Pa. 142.

A municipal corporation which contracts to pay for street improvements by assessments on abutting property, is primarily liable to pay the contract price itself, if it is in its power to make such assessments, or if it fails to make them, or if the assessments it attempts to make are void: Barber Asphalt Paving Co. v. Denver, 72 Fed. Repr. 336 (36 U. S. App. 499); Cummings v. Brooklyn, 11 Paige, 596; Commercial Nat. Bank v. Portland, 24 Ore. 188 (33 Pac. Repr. 532); Denny v. Spokane, 79 Fed. Repr. 719.

There is nothing in the ordinance which authorizes the city treasurer or solicitor to waive the payment of the interest accrued from thirty days after commencement of the work. Nothing to indicate any person or object to which this interest shall be paid other than to the contractor.

*David J. Davis*, city solicitor, for appellee.

OPINION BY MR. JUSTICE ELKIN, May 17, 1911:

This suit was brought to recover the balance due upon a municipal contract for the paving and grading of certain city streets. An ordinance, duly passed and approved, provided for the street improvement. A contract was entered into between the contractor and the city specifying the terms and conditions upon which the work was to be done and how payment should be made. It was expressly provided in the contract that the city should only be liable to the contractor for the amounts actually collected from assessments upon property benefited by the improvement. The language of the contract in this

respect is as follows: "It is further expressly understood and agreed that the fund for the payment of the above contract price is to be derived from assessments on property benefited by the work; and that the city is to be liable to the contractor only for the amounts actually collected from said assessments as the same are collected." The defense is that the city has not yet collected all of the assessments from the property benefited and that to the extent of the uncollected assessments there was no obligation upon the city to pay at the time the suit was instituted. The ordinance was passed and approved in 1901. The contract was executed June 30, 1902, and the work commenced the following month. It was completed in a manner satisfactory to the city authorities in July, 1904. It is conceded that a large balance remains unpaid but it is contended that this suit was prematurely brought because under the terms of the contract the city was not liable to pay until the assessments are collected from the owners of the properties benefited. The contractor is now dead and the administrators of his estate brought suit to recover the balance due on the contract upon the theory that the city by its negligence in collecting the assessments made itself liable for the entire contract price. In their essential features these facts present a case similar in principle to a number of cases decided by this court. The city solicitor concedes that under our decisions the city would be liable to the contractor under the following circumstances: (1) In the event of failure to make valid assessments; (2) upon failure to file liens within the proper time; (3) failure to issue writs of scire facias within five years. The cases do so hold. Where a city issued bonds to pay the cost of paving, and it was provided that the bonds shall be payable only out of assessments levied on and collected by the city from property owners, the city is liable to the bondholders for loss resulting to them by reason of negligence in filing liens, or in failing to issue writs of scire facias upon the liens when filed: Dime Deposit & Discount Bank v. Scranton, 208 Pa. 383. See also

Gable v. Altoona, 200 Pa. 15, and O'Hara v. Scranton, 205 Pa. 142. We think the principle of these cases rules the case at bar. The answer of the city is that in the present case liens were filed and writs of scire facias issued within the time prescribed by law. This, it is asserted, was a technical compliance with the rule and nothing more is required. We cannot adopt this view. Such an adherence to the letter would destroy the spirit of the rule. The primary duty rested upon the city to file the liens and collect the assessments, and the contracting parties covenanted upon this basis. The contractor who in good faith completed the work had a right to insist that the city be diligent in collecting the assessments, which means collection within a reasonable time. If the city had neglected to file the claims within the statutory period, or had failed to issue writs of scire facias within the time prescribed by law, it would have been liable under the authorities cited. So, too, if the liens were not pressed to collection within a reasonable time, the city failed in the performance of a duty resting upon it as the basis of the contractual relation existing between the parties, and the contractor under such circumstances may sue for the balance due upon the contract. It would be most unconscionable to permit the city to stand idly by for a period of four years and more, either refusing or neglecting to do its duty in the collection of the assessments, and then to say to the contractor you have no redress except to await the pleasure of the municipal authorities who in their own good time may or may not press the claims to collection. While the contract provided that the city was only liable to the extent of the assessments as they were collected, the positive duty, from which nothing but performance will absolve it, rested upon the city to file the claims and make the collections. The city, and not the contractor, had this power. It must be held to the utmost good faith in dealing with such a situation. Failure to collect for four, five or six years without reasonable excuse does not show such diligence or good faith

as the law requires, and was in violation of its duty to collect within a reasonable time. Under these circumstances the city must be held to have waived its right to withhold payment until the assessments are collected and became liable to pay upon demand by the contractor. When payment was refused suit was properly brought.

The interest question is not free from difficulty, but after a careful review of the findings of the referee we have concluded in view of all the circumstances that the conclusion reached by him should not be disturbed.

Judgment reversed and record remitted with instructions to the court below to enter judgment as recommended by the referee